IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRYLENE GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-08-1734 |
| | § | |
| SHELL OIL COMPANY & | § | |
| GUSTAVO PENILLA d/b/a | § | |
| QUALITY TURBO SERVICES, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] are Defendant Gustavo Penilla's ("Defendant Penilla") Motion for Summary Judgment (Docket Entry No. 28), Defendant Shell Oil Company's ("Defendant Shell") Motion for Summary Judgment (Docket Entry No. 29), and Defendant Shell's Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 34). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant Penilla's Motion for Summary Judgment, **GRANTS** Defendant Shell's Motion for Summary Judgment, and **DENIES** Defendant Shell's Motion to Strike.

## I. Case Background

Plaintiff Sherrylene Garcia ("Plaintiff") initiated this action against her former employer, Defendant Penilla d/b/a Quality

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 9.

Turbo Services ("QTS"), and Defendant Shell alleging discrimination based on sex under the Civil Rights Act of 1964 ("Title VII").[2] Plaintiff also pled a claim for intentional infliction of emotional distress ("IIED") under state law.[3]

## A.   <u>Factual History</u>

Defendant Penilla was the principal of QTS, a sole proprietorship and independent contractor for Defendant Shell that provided onsite contract services at Defendant Shell's Westhollow Technology Center ("WTC").[4] The contract required QTS to provide Defendant Shell with certain services for a one-year period ending on December 31, 2007, or at an earlier date, if Defendant Shell deemed termination of the contract necessary for any reason.[5]

Defendant Penilla was responsible for hiring and firing QTS's employees, supervising the insulation projects, furnishing any equipment and materials necessary to perform the insulation contracting work, and paying QTS's employees.[6] According to Defendant Shell's human resources manager, Robert Peterson ("Peterson"), QTS had the "sole responsibility for hiring and

---

[2]   42 U.S.C. §§ 2000e-2000e-17.

[3]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 1, p. 7, ¶¶ 19-20.

[4]   Defendant Shell's Motion for Summary Judgment Docket Entry No. 30, Appendix A, Affidavit of Peterson, p. 2, ¶ 4.

[5]   <u>Id.</u>

[6]   <u>See id.</u> at ¶ 2; Defendant Shell's Motion for Summary Judgment, Docket Entry No. 28, Appendix A, Affidavit of Peterson, p. 2, ¶ 4.

firing its employees," as well as for scheduling and compensating employees."[7]   QTS employed less than fifteen persons during the 2006 and 2007 calendar years, retained all of its workers as independent contractors, called workers on an as-needed basis, and paid them according the amount of work they completed.[8]

While QTS performed its independent contractor work for Defendant Shell at WTC, an employee of Defendant Shell, Emerardo Salinas ("Salinas") worked as a lab technician at the WTC facility.[9]   According to Peterson, Salinas "did not have any supervising authority over [Plaintiff] or any other QTS employee."[10]

Plaintiff was hired by Defendant Penilla and began working for QTS on June 1, 2007, for the summer term.[11]   Under their employment arrangement, Plaintiff received work assignments from Defendant Penilla or Blanca Ortiz ("Ortiz"), Defendant Penilla's wife.[12] Plaintiff worked for QTS from July 14, 2007, until August 24, 2007,

---

[7]    Defendant Shell's Motion for Summary Judgment, Docket Entry No. 30, Appendix A, Affidavit of Peterson, pp. 2-3, ¶ 4.

[8]    See Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28, Ex. A, Defendant Penilla's Declaration, p. 1, ¶¶ 1, 3.

[9]    Defendant Shell's Motion for Summary Judgment, Docket Entry No. 30, Appendix A, Affidavit of Peterson, pp. 2-3, ¶ 3.

[10]    Id.

[11]    Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 36, Ex. A, Plaintiff's Psychological Evaluation, p. 7; Ex. B, Affidavit of Plaintiff, p. 15.

[12]    Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 36, Ex. B, Affidavit of Plaintiff, p. 1.

working mostly on the weekends, for a total of eleven days.[13]

Plaintiff avers the following. Within two weeks of Plaintiff's start date, Defendant Penilla scheduled Plaintiff to work with him alone.[14] Defendant Penilla made explicit disclosures about his sexual position preferences, talked about how he performed in bed, asked Plaintiff to watch pornographic films with him, asked Plaintiff for details about her intimate life with her husband, and told Plaintiff when he was aroused.[15] Defendant Penilla and Salinas asked Plaintiff for massages, grabbed Plaintiff's hands and legs, and told Plaintiff not to mention their actions to anybody.[16]

On August 27, 2007, after electronically recording some of Salinas's remarks toward her, Plaintiff reported Defendant Penilla and Salinas to Defendant Shell's human resources department and provided it with a copy of the recordings.[17] That same day, Kimberly Brewer ("Brewer"), a human resources advisor for Defendant Shell, began an investigation regarding the allegations made by Plaintiff. She immediately suspended Salinas and advised Defendant

---

[13]    See Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28, Ex. A, Declaration of Defendant Penilla, p. 2, ¶ 6.

[14]    See Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 36, Ex. B, Affidavit of Plaintiff, p. 1 (unnumbered).

[15]    Id.

[16]    Id.

[17]    Id.

Penilla that he was not allowed to return to Defendant Shell's premises until the investigation was complete.[18]

Defendant Shell extended Salinas's unpaid suspension for a total of four weeks during the investigation and, on December 13, 2007, Shell terminated its independent contractor agreement with QTS.[19]

**B.    Procedural History**

Plaintiff filed charges of discrimination based on sex and a hostile work environment before the United States Equal Employment Opportunity Commission ("EEOC") in the Houston District Office on October 8, 2007, against Defendant Shell and QTS.[20]  On May 5, 2008, the EEOC issued Plaintiff a Notice of Right to Sue under Title VII upon her request.[21]  Plaintiff timely filed her original complaint with this court against Defendant Shell and Defendant Penilla on May 30, 2008.[22]

**II.   Preliminary Matters**

Defendant Shell has moved to strike two items of Plaintiff's responsive summary judgment evidence - Plaintiff's affidavit and

---

[18]    Defendant Shell's Motion for Summary Judgment, Docket Entry No. 30, Appendix A, Affidavit of Peterson, pp. 2-3, ¶ 8.

[19]    Id. at ¶¶ 11, 12.

[20]    Plaintiff's Original Complaint, Docket Entry No. 1, Ex. A, EEOC's processing Charge of Discrimination.

[21]    Id. at Ex. C, Notice of Right to Sue from EEOC.

[22]    See Plaintiff's Original Complaint, Docket Entry No. 1.

an expert report prepared by a licensed clinical psychologist.[23]

Defendant Shell argues that Plaintiff's affidavit "(i) [was] not sworn; (ii) [was] not made under penalty of perjury, and (iii) [did] not contain an averment that the statements contained in the document are true and correct."[24]   Defendant Shell also complains that the expert report was unverified.

In her second response to Defendant Shell's motion, Plaintiff resubmitted her affidavit in admissible form.[25]   Plaintiff also resubmitted her expert's report with a verification.  However, even if verified, the expert report is not relevant to the court's consideration of the present issues.   The court will consider Plaintiff's affidavit.   Defendant Shell's motion to strike is **DENIED**.

### III.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable

---

[23]     See Defendant Shell's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 34, p. 1.

[24]     Id. at p. 2.

[25]     See Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 36, Ex. A, Psychological Evaluation of Plaintiff; Ex. B, Affidavit of Plaintiff.

substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id. at 250.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court

7

should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. In the absence of summary judgment evidence that an actual controversy exists, the court cannot assume that the nonmoving party can or will prove the necessary facts at trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). It is not incumbent on the court to search the record for triable issues. Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

## IV. Analysis

Defendant Shell and Defendant Penilla move for summary judgment on Plaintiff's Title VII claim, both arguing that they were not employers within the meaning of Title VII, but for

8

differing reasons.[26]  Defendant Shell contends that it did not have an employer-employee relationship with Plaintiff and was not her employer because she was an employee of QTS, an independent contractor for Defendant Shell.[27]  Defendant Penilla argues that he was not an employer under Title VII because he did not employ the requisite number of employees.[28]  Defendant Shell and Defendant Penilla also move for summary judgment on Plaintiff's state law claim for IIED.[29]  The court first addresses Plaintiff's Title VII claim.

## A.  <u>Title VII</u>

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a). In order to obtain relief under Title VII for discrimination, the plaintiff has the burden of proving that the defendant(s) is her employer.  42 U.S.C. § 2000e(b).  Title VII defines an employee as "an individual employed by an employer."  42 U.S.C. § 2000e(f).

---

[26]  <u>See</u> Defendant Shell's Motion for Summary Judgment, Docket Entry No. 29; Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28.

[27]  <u>See</u> Defendant Shell's Motion for Summary Judgment, Docket Entry No. 29, p. 6, ¶ 14.

[28]  <u>See</u> Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28, Ex. A, Declaration of Defendant Penilla, pp. 1-2.

[29]  <u>See</u> Defendant Shell's Motion for Summary Judgment, Docket Entry No. 29, pp. 13-14; Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28, pp. 7-8.

Under the statutory definition, an employer is "a person . . . who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 2000e(b). "Determining whether a defendant is an 'employer' under Title VII . . . involves a two-step process." Deal v. State Farm County Mut. Ins. Co. of Tex., 5 F.3d 117, 118 (5th Cir. 1993). The Fifth Circuit held that, "first, the defendant must fall within the statutory definition." Id. at 118. If the defendant meets the statutory definition, then is must be determined that there is "an employment relationship between the plaintiff and the defendant." Id.; see generally, Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1019 (5th Cir. 1990).

**1.    Defendant Shell's Motion for Summary Judgment**

Defendant Shell contends that Plaintiff was not an "employee" of Defendant Shell as that term is defined by Title VII and the Fifth Circuit.[30]  Because Title VII requires an employer-employee relationship in order to recover damages, Defendant Shell requests that the court grant its motion for summary judgment.

The hybrid test, which was adopted by the Fifth Circuit in Mares v. Marsh, 777 F.2d 1066 (5th Cir. 1985), is used to determine the extent, if any, of an employer-employee relationship.  The

---

[30]    See Defendant Shell's Motion for Summary Judgment, Docket Entry No. 29, p. 5.

standard was refined in <u>Deal</u>, 5 F.3d at 118-19:

> In determining whether an employment relationship exists within the meaning of Title VII . . . we apply a "hybrid economic realities/common law control test." <u>Fields</u>, 906 F.2d at 1019 (citing <u>Mares v. Marsh</u>, 777 F.2d 1066 (5th Cir. 1985)). The right to control an employee's conduct is the most important component of this test. <u>Fields</u>, 906 F.2d at 1019. When examining the control component, we have focused on whether [1] the alleged employer has the right to hire and fire the employee, [2] the right to supervise the employee, and [3] the right to set the employee's work schedule. <u>See</u> <u>id</u>. at 1020; <u>Mares</u>, 777 F.2d at 1068.  The economic realities component of our test has focused on whether [1] the alleged employer paid the employee's salary, [2] withheld taxes, [3] provided benefits, and [4] set the terms and conditions of employment. <u>See</u> <u>Mares</u>, 777 F.2d at 1068; <u>see also</u> <u>Muhammad v. Dallas County Supervision and Corrections Dept.</u>, 479 F.3d 377, 380 (5th Cir. 2007).

Under the control component of the hybrid test, the first factor is determining whether Defendant Shell had the right to hire and fire Plaintiff.  According to the summary judgment evidence, Defendant Shell did not have the right to hire and fire Plaintiff. Defendant Shell's human resources manager stated, "QTS had the sole responsibility for hiring and firing any employees, handling all of the related paperwork associated with an employment relationship, and making decisions related to termination."[31]  Additionally, Plaintiff admitted that Defendant Penilla and his wife urged her to work for QTS and that she became employed "at QTS by owner

---

[31]   <u>See</u> Defendant Shell's Motion for Summary Judgment, Docket Entry No. 30, Appendix A, Affidavit of Peterson, p. 2, ¶ 4.

[Defendant] Penilla for the summer."[32]

As to the second and third factors, the evidence shows that Defendant Shell did not have the right to set Plaintiff's work schedule and did not supervise Plaintiff.   Plaintiff called Defendant Penilla, not Defendant Shell or an employee of Defendant Shell, every morning to inquire whether QTS needed her services for the day.[33]  Plaintiff stated in her affidavit that she did not work unless Defendant Penilla or his wife told her that they had work for her to perform.[34]   There is no evidence that Plaintiff was supervised by Defendant Shell or any of its employees.  Defendant Penilla was Plaintiff's supervisor and determined Plaintiff's hours, the amount of her salary, and the jobs that Plaintiff would perform.[35]  Plaintiff did not provide any evidence to raise a fact issue that Defendant Shell or any of its employees set Plaintiff's work schedule or supervised Plaintiff.

Under the economic realities component of the hybrid test, the factors are whether the alleged employer "paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." Deal, 5 F.3d at 119.  Without pointing

---

[32]     Plaintiff's Response to Defendant Shell's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 36, Ex. B, Affidavit of Plaintiff.

[33]     Id.

[34]     See id.

[35]     Id.

to any admissible evidence, Plaintiff argues that she was "paid through a check offered in Shell Company's name."[36]  However, in Defendant Penilla's sworn declaration, he stated, "QTS paid its contractors for their services, [and he] made decisions as what contractors would perform jobs for QTS and managed the day-to-day business of QTS."[37]  Additionally, Defendant Penilla averred that the persons "QTS contracted with to do the insulation jobs were paid by [QTS] according to the amount of work they did."[38]  This is substantiated by clauses 20-20.2 of the contract between Defendant Shell and QTS, specifically, "Vendor's (QTS) personnel will not be eligible to participate in any of Buyer's (Shell) employee benefit plans."[39]  Plaintiff was dependent on QTS as a matter of economic reality since her salary and hours were based, set, and paid by QTS, and Plaintiff was not entitled to participate in Defendant Shell's benefit plans.

In further support of her contention that she was an employee of Defendant Shell, Plaintiff alleges that Defendant Shell "has the control over [Defendant Penilla] and how he operates the insulations, because Shell Company admitted the right to take

---

[36]    Plaintiff's Response to Defendant Shell's Motion for Summary Judgment, Docket Entry No. 33, p. 6.

[37]    Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28, Ex. A, Declaration of Defendant Penilla, p. 1, ¶ 2.

[38]    Id. at ¶ 3.

[39]    See Appendix to Defendant Shell's Motion for Summary Judgment, Docket Entry No. 30, Ex. A-1, Contracts between Defendant Shell and QTS.

action over the purchase of all insulation materials."[40] Plaintiff's argument misses the mark. The issue is not Defendant Shell's ability to reject the quality of QTS's work or materials, but its control over the terms and conditions of Plaintiff's employment. See Deal, 5 F.3d at 119.

Since Plaintiff failed to present, and the court is unable to locate, any evidence raising a fact issue that Defendant Shell was Plaintiff's employer within the meaning of Title VII, the court **GRANTS** Defendant Shell's Motion for Summary Judgment.

### 2. Defendant Penilla's Motion for Summary Judgment

Defendant Penilla argues that the court should grant his motion for summary judgment because QTS, Defendant Penilla's sole proprietorship, was not an employer within the meaning of the statutory language of Title VII.[41]

As previously stated, in order for an employer to be subject to the provisions of Title VII, it must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." See 42 U.S.C. § 2000e(b).

Defendant Penilla stated that "the people who QTS contracted with to do the insulation jobs were paid by Quality Thermo Services

---

[40]   Plaintiff's Response to Defendant Shell's Motion to Strike Plaintiff's Summary Judgment Evidence, Docket Entry No. 36, Ex. B, Affidavit of Plaintiff.

[41]   Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28, p. 4.

14

according to the amount of work they did."[42]   Defendant Penilla
stated that the "ebb and flow of work orders submitted by Shell did
not allow QTS to maintain a constant force of full-time
employees."[43]   The workers were called on "an as-needed basis,"
depending on the size and duration of the services requested.[44]
Plaintiff's own admission that she worked only when called
substantiates Defendant Penilla's testimony.[45]

Defendant Penilla stated:

> At no time during 2006 or 2007 did QTS have fifteen
> or more contractors on its payroll.  The maximum number
> of contractors that performed services for QTS on any one
> day in 2006 was eight contractors.  The maximum amount of
> contractors QTS had on any one day in 2007 was six
> contractors.  The maximum number of contractors QTS had
> in any one month in 2006 was twelve.  The maximum number
> of contractors QTS had in any one month in 2007 was
> eleven.  The maximum number of contractors in 2006
> altogether [was] fourteen, and the maximum number of
> contractors in 2007 altogether was thirteen.[46]

Plaintiff failed to raise a fact issue that QTS employed the
requisite number of employees in order to be considered an employer
under Title VII, thus the court determines that QTS was not an

---

[42]     Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 4,
Declaration of Defendant Penilla, p. 1 ¶ 3.

[43]     Id.

[44]     Id.

[45]     See Plaintiff's Response to Defendant's Motion to Strike Plaintiff's
Summary Judgment Evidence, Docket Entry No. 36, Ex. B, Affidavit of Plaintiff.

[46]     Defendant Penilla's Motion for Summary Judgment, Docket Entry No. 28,
Ex. A, Defendant Penilla's Declaration, pp. 1-2, ¶ 4.

employer within the statutory meaning of Title VII.  Defendant
Penilla's motion for summary judgment is **GRANTED**.

**B.**   **Intentional Infliction of Emotional Distress**

The only remaining claim is a state law claim for intentional
infliction of emotional distress.  As the court's decision
dismisses all of Plaintiff's federal causes of action, the court
declines to exercise supplemental jurisdiction over the remaining
claim and dismisses Plaintiff's intentional infliction of emotional
distress claim without prejudice.  See 28 U.S.C. § 1367(c)(3)
(giving district courts the power to decline supplemental
jurisdiction over state law claims when "the district court has
dismissed all claims over which it has original jurisdiction");
Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir.
2000)(indicating that, upon dismissal of all federal claims, the
court should dismiss the supplemental state law claims without
prejudice).

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendant Shell's
Motion for Summary Judgment, **DENIES** Defendant Shell's Motion to
Strike Plaintiff's Summary Judgment Evidence, and **GRANTS** Defendant
Penilla's Motion for Summary Judgment.  Plaintiff's IIED cause of
action is **DISMISSED**, without prejudice, subject to refiling in
state court pursuant to 28 U.S.C. § 1367(d).

16

**SIGNED** in Houston, Texas, this 10th day of July, 2009.

Nancy K. Johnson
United States Magistrate Judge